UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X
RONALEE BALOG,

                                 Plaintiff,                                      Civil Case No.:
                                                               1:26-cv-1412

        -against-

MACQUARIE HOLDINGS (U.S.A.) INC,
MACQUARIE INFRASTRUCTURE AND REAL ASSETS INC.,    **<u>COMPLAINT</u>**
MACQUARIE INFRASTRUCTURE PARTNERS INC.,
MACQUARIE INFRASTRUCTURE PARTNERS U.S. GP LLC,
MACQUARIE INFRASTRUCTURE PARTNERS IV GP LLC,
MACQUARIE INFRASTRUCTURE PARTNERS IV, L.P.,        Plaintiff Demands a
MACQUARIE INFRASTRUCTURE PARTNERS V GP, LLC,      Trial by Jury
MACQUARIE INFRASTRUCTURE MANAGEMENT (USA) INC.,
MACQUARIE AMERICA HOLDINGS INC.,
LEIGH HARRISON, individually, and
KARL KUCHEL, individually,

                                 Defendants.
-----------------------------------------------------------------------------------X

        Plaintiff RONALEE BALOG (hereinafter referred to as "Plaintiff") by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants MACQUARIE HOLDINGS (U.S.A.) INC, MACQUARIE INFRASTRUCTURE AND REAL ASSETS INC., MACQUARIE INFRASTRUCTURE PARTNERS INC., MACQUARIE INFRASTRUCTURE PARTNERS U.S. GP LLC, MACQUARIE INFRASTRUCTURE PARTNERS IV GP LLC, MACQUARIE INFRASTRUCTURE PARTNERS IV, L.P., MACQUARIE INFRASTRUCTURE PARTNERS V GP, LLC, MACQUARIE INFRASTRUCTURE MANAGEMENT (USA) INC., MACQUARIE AMERICA HOLDINGS INC., LEIGH HARRISON, individually, and KARL KUCHEL, individually (hereinafter referred to collectively referred to as "Defendants"), upon information and belief as follows:

## NATURE OF THE CASE

1.    Plaintiff complains of Defendants pursuant to Title VII of the Civil Rights Act of 1964 a codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), as amended, the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"), and to remedy violations of the laws of the State of New York and the New York City Administrative Code ("NYCHRL"), based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff suffered as a result of, *inter alia*, sex/gender discrimination, pregnancy discrimination, disability discrimination, hostile work environment, retaliation, unlawful termination, and all other causes of action set forth herein against Defendants.

## JURISDICTION AND VENUE

2.    Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII, the FMLA and the ADA. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto. This action involves questions of Federal law.

3.    Additionally, this Court has supplemental jurisdiction under the State and City causes of action asserted herein.

4.    On or about April 2, 2025, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC").

5.    On or about November 21, 2025, Plaintiff received a Right to Sue Letter from the U.S. Equal Employment Opportunity Commission.

6.      Plaintiff satisfied all administrative prerequisites and filed this case within ninety (90) days of receiving the Right to Sue Letter.

7.      Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

## PARTIES

8.      At all times material, Plaintiff Ronalee Balog was and is an individual female.

9.      At all times material, Defendant MACQUARIE HOLDINGS (U.S.A.) INC was and is a foreign business corporation duly existing by the virtues and laws of the State of Delaware that does business in the State of New York.

10.      At all times material, Defendant MACQUARIE INFRASTRUCTURE AND REAL ASSETS INC. was and is a foreign business corporation duly existing by the virtues and laws of the State of Delaware that does business in the State of New York.

11.      At all times material, Defendant MACQUARIE INFRASTRUCTURE PARTNERS INC. was and is a foreign business corporation duly existing by the virtues and laws of the State of Delaware that does business in the State of New York.

12.      At all times material, Defendant MACQUARIE INFRASTRUCTURE PARTNERS U.S. GP LLC was and is a foreign limited liability company duly existing by the virtues and laws of the State of Delaware that does business in the State of New York.

13.      At all times material, Defendant MACQUARIE INFRASTRUCTURE PARTNERS IV GP LLC was and is a foreign limited liability company duly existing by the virtues and laws of the State of Delaware that does business in the State of New York.

14.     At all times material, Defendant MACQUARIE INFRASTRUCTURE PARTNERS IV, L.P. was and is a foreign limited liability company duly existing by the virtues and laws of the State of Delaware that does business in the State of New York.

15.     At all times material, Defendant MACQUARIE INFRASTRUCTURE PARTNERS V GP, LLC was and is a foreign limited liability company duly existing by the virtues and laws of the State of Delaware that does business in the State of New York.

16.     At all times material, Defendant MACQUARIE INFRASTRUCTURE MANAGEMENT (USA) INC. was and is a foreign limited liability company duly existing by the virtues and laws of the State of Delaware that does business in the State of New York.

17.     At all times material, Defendant MACQUARIE AMERICA HOLDINGS INC. was and is a foreign limited liability company duly existing by the virtues and laws of the State of Delaware that does business in the State of New York.

18.     At all times material, Defendants MACQUARIE HOLDINGS (U.S.A.) INC, MACQUARIE INFRASTRUCTURE AND REAL ASSETS INC., MACQUARIE INFRASTRUCTURE PARTNERS INC., MACQUARIE INFRASTRUCTURE PARTNERS U.S. GP LLC, MACQUARIE INFRASTRUCTURE PARTNERS IV GP LLC, MACQUARIE INFRASTRUCTURE PARTNERS IV, L.P., MACQUARIE INFRASTRUCTURE PARTNERS V GP, LLC, MACQUARIE INFRASTRUCTURE MANAGEMENT (USA) INC., and MACQUARIE AMERICA HOLDINGS INC. operated as a single integrated enterprise and may hereinafter collectively be referred to as "MACQUARIE Defendants."

19.     At all times material, MACQUARIE Defendants employed Defendant LEIGH HARRISON (hereinafter referred to as "HARRISON") as Global Head of Real Assets.

20.    At all times material, Defendant HARRISON held supervisory authority over Plaintiff, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

21.    At all times material, MACQUARIE Defendants employed Defendant KARL KUCHEL (hereinafter referred to as "KUCHEL") as Chief Executive Officer.

22.    At all times material, Defendant KUCHEL held supervisory authority over Plaintiff, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

23.    At all times material, Defendants jointly employed Plaintiff and qualified as Plaintiff's employer within the meaning of Title VII, the FMLA, the ADA, and New York State and New York City laws.

## RELEVANT FACTS

24.    In or around March 2022, Defendants hired Plaintiff as Head of Portfolio Performance Group ("PPG") in the Americas. Defendants tasked Plaintiff with building a cross functional team responsible for increasing profitability in the companies owned by Defendant MACQUARIE INFRASTRUCTURE PARTNERS INC.

25.    Plaintiff's employment with Defendants commenced on or about March 14, 2022.

26.    Plaintiff reported directly to MACQUARIE Defendants' CEO, Defendant KUCHEL, as he was responsible for Defendants' investment portfolios.

27.    Throughout the course of Plaintiff's employment, Plaintiff had an excellent performance record, received numerous bonuses, and stellar reviews.

28.    Nevertheless, throughout Plaintiff's employment, Defendants discriminated against female employees (including Plaintiff) who became pregnant during their tenure.

29.    In or around October 2022, Plaintiff completed IVF treatments. Plaintiff shared her experience with Defendants' Human Resources Leader, CANA IWAHARA ("IWAHARA"). Plaintiff expressed her desire to become pregnant, as well as her efforts to actively conceive through IVF.

30.    On or about November 30, 2022, MACQUARIE Defendants purchased DTG RECYCLE (hereinafter referred to as "DTG"), a commercial recycler that does business in the State of Washington.

31.    In or around January 2023, Defendants appointed Plaintiff as a member of DTG's Board of Directors. In or around February 2023, while attending her first Board of Directors meeting at DTG, Plaintiff learned that DTG failed to produce any financial statements, and that DTG's cash accounts did not balance out.

32.    As a result, Plaintiff called Defendant KUCHEL and voiced her concerns regarding Defendants' improper due diligence of DTG's finances.

33.    Moreover, in light of DTG's possible financial fraud, Plaintiff spoke with another member of DTG's Board of Directors and recommended that Defendants remove DTG's Chief Financial Officer ("CFO") to search for a replacement.

34.    Plaintiff engaged in protected activity by complaining to Defendant KUCHEL regarding DTG's potential fraud.

35.    Shortly after speaking with Defendant KUCHEL, Defendants retaliated against Plaintiff by removing her from DTG's Board of Directors. KUCHEL took Plaintiff's place, as he had a personal relationship with an investor in DTG. Moreover, KUCHEL scolded Plaintiff for raising these concerns and instructed her to "play nice."

36.    By removing Plaintiff from DTG's Board, Defendants retaliated against Plaintiff and subjected her to an adverse employment action.

37.    Thereafter, in or around May 2023, Defendants continued to retaliate against Plaintiff by withholding $200,000.00 of Plaintiff's bonus.

38.    Despite the aforementioned issues, Plaintiff excelled in her role as Head of PPG - Americas and Defendants informed Plaintiff of their interest in having Plaintiff assume the role of Global PPG Director.

39.    By way of example only, in Plaintiff's 2023 performance review, Defendant's praised Plaintiff for her "global leadership of the PPG as demonstrated by your connectivity and collaboration with the other regional PPG leads." Moreover, Defendants encouraged Plaintiff to ensure "the global PPG process model is followed."

40.    Throughout Spring 2023, Plaintiff had several discussions with Defendants' Senior Managing Director, NICOLA HETHERINGTON (hereinafter referred to as "HETHERINGTON") in furtherance of Plaintiff's transition to become Defendants' Global PPG Director. HETHERINGTON suggested that Plaintiff would be an excellent candidate for the position.

41.    Significantly, Defendants' Global Heads of Talent, Procurement, IT, and Sustainability all reported directly to Plaintiff.

42.    In or around July 2023, Plaintiff underwent another cycle of IVF treatment and once again discussed her treatment/experience with IWAHARA.

43.    In or around December 2023, Plaintiff learned that she was pregnant.

44.    While pregnant, Defendants required Plaintiff to travel 3-4 days per week, including trips to MACQUARIE's New York office every two weeks to meet with colleagues.

45.     In or around February 2024, HETHERINGTON conferred with Plaintiff regarding the design of the Global PPG team and asked Plaintiff what resources Plaintiff needed in order to facilitate her development of the role. In addition, HETHERINGTON instructed Plaintiff to meet with the CEOs of Defendants' Asia operations regarding the Global PPG capabilities.

46.     On another occasion, in or around March 2024, HETHERINGTON instructed Plaintiff to meet with Defendants' Global Head of Private Equity to discuss building the Global PPG team.

47.     In or around May 2024, Defendants again noted that Plaintiff "meets expectations" on her performance review and finally paid Plaintiff her $200,000.00 bonus from the year prior.

48.     At this time, Plaintiff did not explicitly disclose her pregnancy to any MACQUARIE colleagues but was asked by several team members based on Plaintiff's appearance.

49.     By way of example, on or about May 5, 2024, MACQUARIE celebrated "Memo Day," to commemorate the bonus payment of various employees. Plaintiff was in New York for this event and met with several colleagues including IWAHARA and KUCHEL. Plaintiff was six months pregnant and visibly showing.

50.     Tragically, on or about May 21, 2024, Plaintiff's domestic partner suddenly passed away.

51.     That same day, Plaintiff informed her colleague, RAUL NARSICO ("NARSICO") of her partner's death as well as her pregnancy. Upon information and belief, NARSICO informed Defendant KUCHEL and Plaintiff's other colleagues.

52.     As a result, Defendants granted Plaintiff a medical leave of absence in accordance with the Family and Medical Leave Act ("FMLA") beginning May 22, 2024, until June 6, 2024.

53.     At all times material, Plaintiff worked part time throughout her leave while she grieved the loss of her partner.

54.     On or about June 10, 2024, Plaintiff returned to work.

55.     On or about June 17, 2024, Defendant KUCHEL and Defendants' Global Head of Real Assets, Defendant HARRISON, requested that Plaintiff join a 7:30 A.M. Zoom call. Upon joining the call, KUCHEL and HARRISON advised Plaintiff that Defendants decided to restructure Plaintiff's role and look externally to hire a Global PPG Leader. Plaintiff inquired whether she was a candidate, or whether she could apply for the position. However, Defendant HARRISON explicitly instructed Plaintiff that she was not permitted to apply for the position. Plaintiff specifically asked whether the role was a replacement for Plaintiff's role, and was instructed that it was not.

56.     Shortly thereafter, Plaintiff spoke with HETHERINGTON regarding the Global PPG Leader position and asked the same questions. HETHERINGTON informed Plaintiff that she was not being replaced, and that the future structure would be decided on as a group, including Plaintiff. This never occurred.

57.     Defendants retaliated against Plaintiff for taking FMLA leave, and discriminated against Plaintiff on the basis of her sex/gender and pregnancy.

58.     On or about June 22, 2024, Plaintiff reached out to MACQUARIE Defendants' Human Resources regarding her conversation with Defendant KUCHEL and Defendant HARRISON concerning Defendants' decision to strip Plaintiff of the Global PPG role. Defendants deceptively assured Plaintiff that her current role was not in jeopardy.

59.     On or about June 23, 2024, Plaintiff spoke with Defendant HARRISON. HARRISON assured Plaintiff that no decision had been made regarding the restructuring but advised Plaintiff that she would report to the new Global PPG Leader.

60.    In or around July 2024, Plaintiff began experiencing pregnancy-related disabilities that required multiple visits to the Emergency Room. Plaintiff shared this information with IWAHARA and MACQUARIE's Human Resources Team.

61.    On or about August 12, 2024, Defendant KUCHEL cancelled all meetings with Plaintiff in his calendar.

62.    On or about August 21, 2024, Plaintiff began her maternity leave.

63.    On or about August 22, 2024, Plaintiff gave birth to her daughter.

64.    Shortly after giving birth, Plaintiff's daughter experienced medical complications and was readmitted to the intensive care unit. Defendants were notified of the hospitalization, as well as the strong likelihood of Plaintiff's daughter suffering from a medical disability.

65.    On or about November 5, 2024, while on maternity leave, Defendant KUCHEL requested that Plaintiff join a Zoom call. During this call, KUCHEL terminated Plaintiff stating that Defendants were "restructuring the team."

66.    At all times material, none of Plaintiff's other team members were impacted by Defendants' alleged "restructuring."

67.    Defendants terminated Plaintiff, while on maternity leave, for being a widowed single mother with a child that suffered from a medical disability.

68.    Defendants discriminated against Plaintiff on the basis of her sex/gender, pregnancy, and associational disability.

69.    Moreover, Defendants retaliated against and unlawfully terminated Plaintiff based on the same.

70.    Upon information and belief, rather than Defendants informing Plaintiff's team that she had been terminated due to the aforementioned "restructuring," Defendants informed Plaintiff's

team that she was not returning due "to the emotional distress of [Plaintiff's] *personal circumstances*."

71.    Aside from unlawfully terminating Plaintiff while she was on maternity leave, Defendants delayed and withheld information from Plaintiff regarding her medical benefits. This caused Plaintiff significant emotional distress given her child's serious medical condition.

72.    As a result of Defendant's actions, Plaintiff feels extremely humiliated, degraded, victimized, and embarrassed.

73.    As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress.

74.    Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

75.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

76.    Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

77.    Plaintiff claims unlawful discharge and seeks reinstatement to her position.

78.    Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable laws pertaining to Independent Contractors.

79.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

80.    The above are just some examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(AGAINST MACQUARIE DEFENDANTS)**

81.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

82.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:

> "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

83.    Moreover, Title VII, as amended in 1978 by the Pregnancy Discrimination Act, provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

84.    MACQUARIE Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq*., by subjecting Plaintiff to discrimination on the basis of her sex/gender, pregnancy and disability, together with causing a hostile work environment, and unlawfully terminating Plaintiff based on same.

85.    Plaintiff hereby makes a claim against MACQUARIE Defendants under all of the applicable paragraphs of Title VII.

86.    MACQUARIE Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(AGAINST MACQUARIE DEFENDANTS)**

87.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

88.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) [Section 704] provides that it shall be an unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

89.     MACQUARIE Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e, et. seq., by retaliating against Plaintiff with respect to the terms, conditions, or privileges of her employment because of her opposition to the unlawful employment practices of Defendants.

90.     MACQUARIE Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE AMERICANS WITH DISABILITIES ACT**
**(AGAINST MACQUARIE DEFENDANTS)**

91.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

92.     Plaintiff claims that MACQUARIE Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

93.    42 U.S. Code § 12112 specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

94.    Moreover, 42 U.S. Code § 12112(b)(4) provides that: "discriminate against a qualified individual on the basis of disability" includes: "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;"

95.    Plaintiff was qualified to perform the essential functions of her job and is a qualified individual as defined above.

96.    Plaintiff placed Defendants on notice that her child suffered from a medical disability for whom Plaintiff is the primary caregiver.

97.    MACQUARIE Defendants violated the section cited herein by terminating Plaintiff's employment because of her pregnancy-related disabilities, as well as her association with her disabled child.

98.    Plaintiff hereby makes a claim against MACQUARIE Defendants under all of the applicable paragraphs of the ADA.

99.    MACQUARIE Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FOURTH CAUSE OF ACTION
FOR RETALIATION UNDER
THE AMERICANS WITH DISABILITIES ACT
(AGAINST MACQUARIE DEFENDANTS)**

100.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

101.     Plaintiff claims MACQUARIE Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

102.     SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

103.     MACQUARIE Defendants engaged in unlawful employment practice prohibited by the above statute, by retaliating against Plaintiff with respect to the terms, conditions or privileges of her employment because of her opposition to the unlawful employment practices of Defendants.

104.     MACQUARIE Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION
FOR RETALIATION UNDER
FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.
(AGAINST MACQUARIE DEFENDANTS)**

105.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

106.     29 U.S. Code § 2615 states:

Prohibited acts

15

(a) Interference with rights
    (1) Exercise of rights
    It shall be unlawful for any employer to interfere with, restrain, or deny the
    exercise of or the attempt to exercise, any right provided under this subchapter.

    (2) Discrimination
    It shall be unlawful for any employer to discharge or in any other manner
    discriminate against any individual for opposing any practice made unlawful by
    this subchapter.

107.    29 U.S. Code § 2614 provides in relevant part:

    (a) Restoration to position

        (1) In general
        Except as provided in subsection (b), any eligible employee who takes leave
        under section 2612 of this title for the intended purpose of the leave shall be
        entitled, on return from such leave—

            (A) to be restored by the employer to the position of employment held by
                the employee when the leave commenced; or
            (B) to be restored to an equivalent position with equivalent employment
                benefits, pay, and other terms and conditions of employment.

        (2) Loss of benefits
        The taking of leave under section 2612 of this title shall not result in the loss of any
        employment benefit accrued prior to the date on which the leave commenced.

108.    Plaintiff engaged in protected activity under the FMLA by taking medical leave.

109.    Defendants retaliated against Plaintiff by terminating her while on medical leave.

110.    Defendants failed to restore Plaintiff to her position of employment, and interfered with

Plaintiff's right to benefits in accordance with the above statutory protections.

111.    As a result, Plaintiff has suffered damages.

**AS A SIXTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
NEW YORK STATE LAW
(AS AGAINST ALL DEFENDANTS)**

112.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

16

113.    Executive Law § 296 provides that:

"1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

114.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, gender, pregnancy, harassing Plaintiff, causing a hostile work environment, and unlawfully terminating Plaintiff based on the same.

115.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

116.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
## (AS AGAINST ALL DEFENDANTS)

117.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

118.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

119.    Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff.

120.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING UNDER**
**NEW YORK STATE LAW**
**(AS AGAINST ALL DEFENDANTS)**

121.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

the complaint.

122.    New York State Executive Law §296(6) further provides that "It shall be an unlawful

discriminatory practice for any person to aid, abet, abet, incite, compel or coerce the doing of any

of the acts forbidden under this article, or to attempt to do so."

123.    Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling

and/or coercing the discriminatory behavior as stated herein.

124.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AS AGAINST ALL DEFENDANTS)**

125.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

126.    The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful

discriminatory practice:

> "(a) For an employer or an employee or agent thereof, because of the actual or perceived
> age, race, creed, color, national origin, gender, disability, marital status, sexual orientation
> or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to
> discharge from employment such person or to discriminate against such person in
> compensation or in terms, conditions or privileges of employment."

127.    Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, by creating and maintaining discriminatory working conditions and

a hostile work environment, and otherwise discriminating against the Plaintiff because of her sex,

gender, and pregnancy.

128.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

129.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A TENTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (AS AGAINST ALL DEFENDANTS)

130.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

131.    The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

132.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1)(e) by retaliating against Plaintiff because of her opposition to the unlawful employment practices of her employer.

133.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN ELEVENTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (AGAINST ALL DEFENDANTS)

134.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

135.    The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

136.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

137.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A TWELFTH CAUSE OF ACTION**
**FOR SUPERVISOR LIABILITY UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

138.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

139.     Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

> "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

140.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay,

attorney's fees, costs, interest and all other damages as are just and proper to remedy Defendants'

unlawful employment practices.


**JURY DEMAND**


    Plaintiff demands a jury trial on all issues to be tried.


Dated:  New York, New York
        February 19, 2026

                                       Respectfully submitted,

                                       **DEREK SMITH LAW GROUP, PLLC**
                                       *Attorneys for Plaintiff*

                                       _____
                                         Zachary I. Holzberg, Esq.
                                         450 7th Avenue, 30th Floor
                                         New York, New York 10123